800 F.2d 212
 The MEADOWS OF WEST MEMPHIS, An Arkansas Limited
Partnership; Robert E. McCarley; and James C.
Ranier, III, Appellants,
v.
CITY OF WEST MEMPHIS, ARKANSAS; Bill Burnett; Roger
Sumpter; Clarence Guin; Doug Morris; Roberta Jackson;
Pritchard Horton; Joe Brasfield; Randy Dalton; Larry
Shelton; and James Cooper, Appellees.
 No. 86-1066.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 10, 1986.
Decided Sept. 5, 1986.
 
 Ted Mackall, Jr., West Memphis, Ark., for appellants.
 David H. White, North Little Rock, Ark., for appellees.
 Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and STROM,* District Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 The Meadows of West Memphis, a limited partnership, was formed in 1985 for the sole purpose of constructing a complex of apartments in the City of West Memphis, Arkansas. It sought to finance the construction through the issuance of state revenue bonds under the authority of a recent act of the Arkansas General Assembly. Issuance of these bonds was blocked by a resolution of the City Council of West Memphis, a procedure allowed under the statute. The Meadows then brought this action in the United States District Court for the Eastern District of Arkansas alleging that the City's action was racially motivated and consequently violated the Fair Housing Act, 42 U.S.C. Secs. 3601-31, and the Fourteenth Amendment. Injunctive, declarative, and damages relief were sought under 42 U.S.C. Secs. 1981, 1982, and 1983. The District Court dismissed the complaint on the ground that the case was not ripe for adjudication. The appeal is on that narrow question. We reverse.
 
 
 2
 The Arkansas Development Finance Authority Act, Ark.Stat.Ann. Secs. 13-2901-23, was enacted for the purposes, inter alia, of providing a source of public financing for capital improvements such as hospitals, schools, and housing for the elderly and for citizens of lower income. The Act established a Development Finance Authority which is empowered to issue bonds for financing projects within the purposes of the Act. If a particular project is being financed for the benefit of a private individual or organization, the Authority sends notice to the municipality in which the project is to be located. The city then has the power to express its opposition to the project by passing an ordinance or resolution. If a city does this, then the DFA cannot issue the bonds for one year.
 
 
 3
 The Meadows was formed for the purpose of taking advantage of this new source of funding. Land was acquired and plans made for the construction of a housing development in which a portion of the units would be occupied by families of low or moderate income. The Authority gave its initial approval of the bonds required for the project and sent written notice to the City Council of West Memphis, as required by the Act. On June 6, 1985, the City Council enacted Resolution 1015 expressly disapproving of The Meadows project and giving its reasons. The resolution was forwarded to the Authority, resulting at least in postponement of the expected bond issue for a year.
 
 
 4
 The Meadows' complaint alleged that the City Council's resolution of disapproval was in response to race-motivated opposition of residents in the immediate area of the proposed project. The City Council denied this and moved for dismissal on the ground that The Meadows' complaint was not ripe for decision. Its reasoning was that since the Act gave the City only the power to delay for one year the issuance of public financing under the Act. The Meadows had not yet suffered an injury which a court could recognize. The District Court agreed with the City's reasoning and dismissed the complaint, whence we have the present appeal.
 
 
 5
 Although the ripeness doctrine has its roots in the case-or-controversy limitation on federal jurisdiction in Article III, as a matter of practice the doctrine includes as well certain self-imposed judicial policies which caution against exercising the full power of the courts when it is not necessary to do so. See Bergstrom v. Bergstrom, 623 F.2d 517, 519 (8th Cir.1980). Even when the court concededly possesses jurisdiction to decide a question of constitutional law, it will decline to do so if a less fundamental ground will suffice, or if the issue is not squarely presented in an adversary context, or if it can be said that the issue is so premature that the court would have to speculate as to the presence of a real injury. See generally Ashwander v. TVA, 297 U.S. 288, 346-48, 56 S.Ct. 466, 482-83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). It is unwise to entangle the courts in abstract disagreements over the meaning of executive or administrative decisionmaking before that process has become concrete, Abbott Laboratories v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), or to sit in final judgment over an Act of Congress before it is necessary to do so, Ashwander, 297 U.S. at 346-48, 56 S.Ct. at 482-83 (Brandeis, J., concurring). Similarly, the courts are properly reluctant to interfere with the action of some other governmental authority unless presented with "a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity." Poe v. Ullman, 367 U.S. 497, 503, 81 S.Ct. 1752, 1755, 6 L.Ed.2d 989 (1961) (Frankfurter, J.) (plurality opinion).
 
 
 6
 Here, we have no doubt that the case is ripe for adjudication. The complaint alleges that the City, for a constitutionally impermissible racial reason, has blocked the plaintiff's access to public financing for at least a year. We must accept this allegation as true for present purposes, because this case comes to us on appeal from a judgment granting a motion to dismiss for failure to state a claim. The injury alleged is real, definite, and complete. If for some reason a further postponement occurs, or if the present postponement causes the project to fail completely, the degree of injury will be increased, but even if only a one-year postponement occurs, and the project is ultimately built, a real economic loss has still occurred, or at least the complaint so alleges. The economic benefits expected to be realized by the plaintiff will have been postponed for a year, and expenses incurred in procuring the Authority's initial approval will be lost, at least in part. If this case is not ripe now, it is hard to see when it ever will be. The Legislature of Arkansas has provided a public benefit to encourage housing, and this benefit should not be either delayed or lost completely because of a city's violation of federal law.
 
 
 7
 The City suggests that the District Court went beyond the question of ripeness and in fact entered summary judgment for it. Under Fed.R.Civ.P. 12(b), a motion to dismiss shall be treated as a motion for summary judgment if matters outside the pleadings are presented to and not excluded by the court, and the opposing party has an opportunity to reply in kind. The city attached to its responsive pleading a copy of the relevant Arkansas statute and of the City Council's resolution disapproving of The Meadows project. These materials, of course, could prove nothing as to the defendants' motivation, which is the crucial issue under The Meadows' theory. In addition, the District Court's order makes clear that its dismissal of the complaint was based firmly on its view that the case was not ripe. We therefore reject as without merit the argument that we could affirm this judgment on some ground other than ripeness. This is not to say, of course, that the City will not prevail on remand, either after a trial or on motion for summary judgment. That will depend on evidence, and this case has not yet reached the stage where evidence as to why the City Council adopted the resolution in question has been considered.
 
 
 8
 The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.
 
 
 9
 It is so ordered.
 
 
 
 *
 The Hon. Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation